ADAMS, APPELLEE, *v.* ADMINISTRATOR, OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLANT.

(No. 50222 — Decided March 10, 1986.)

*Julius E. Kovacs,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Virginia A. Vito,* for appellant.

PRYATEL, J. This is an appeal by the Administrator of the Ohio Bureau of Employment Services (hereinafter "bureau") of the judgment of the Cuyahoga County Court of Common Pleas reversing the bureau's denial of unemployment compensation benefits to appellee George D. Adams.

Adams initially was found to be eligible for benefits after termination by his employer, Cleveland Tractor Company, Inc., in August 1980; he received $2,424 in benefits. Subsequently, the administrator found that Adams had made "fraudulent" misrepresentations and that he was self-employed and ordered him to repay the $2,424 he had received for the weeks ending March 14, 1981 through May 30, 1981. Adams also was declared ineligible to receive benefits for twenty-four otherwise valid weekly claims filed between June 19, 1983 and June 15, 1985.

Adams appealed to the board of review and at his hearing stipulated that during the time he received benefits he owned fifty percent of, and was the president of, J.D. Equipment Repair Company, a heavy equipment repair business. However, from March 6, 1981, when it was incorporated, until May 30, 1981, Adams received no salary or wages either as an employee, shareholder or officer of the company. Nor did he receive any compensation or reimbursement in the form of gasoline expenses, use of an automobile, etc. He devoted an average of eight hours per *week* to the business, during which time he made phone calls and did some billing and delivery of parts. The company had

no employees other than a bookkeeper who was paid $3,904 in 1981. Any repair work obtained by the company was sub-contracted to another repair firm. On the benefit claim form, Adams answered "no" to question No. 5, which reads: "Did you work or were you self-employed (including farm work) during the week identified above?" He did not report his association with the company to the bureau because he did not believe it necessary to do so as long as he was not "gainfully" employed. He explained, "There was no money there to pay me so it's not employment to me," and "Drawing a salary and earning a living is being employed to me." Adams testified that he continued to look for work and if a job were offered, he was ready, willing, and able to accept it.

The only other witness at the hearing was Robert Semancik, a fraud investigator for the bureau, who did not do the Adams investigation, but conducted a fact-finding interview of Adams. Semancik testified that Adams told him that he (Adams) knew that if he told the bureau about the company that benefits would be denied him, and he needed the money. However, the referee noted that Adams did not sign the statement from the interview.

The referee found that Adams made fraudulent misrepresentations with the object of obtaining benefits to which he was not entitled. Adams was ordered to repay $2,424 in benefits which he had received and he was declared ineligible to receive benefits for twenty-four weeks. Adams' application to institute further appeal before the board (tantamount to a request for reconsideration) was disallowed and he appealed to the court.

The court reversed the decision of the board of review as unreasonable and ordered that full benefits due Adams be restored and that he not be liable for any reimbursement.

The bureau appeals, assigning the following error.

### Assignment of Error

"The common pleas court erred in reversing the board of review's determination that the claimant had made fraudulent misrepresentation with the object of obtaining benefits to which he is not entitled and consequently is required to make restitution to the bureau in the amount of $2,424.00."

The sole question presented to us is whether a claimant may receive unemployment compensation benefits when he otherwise qualifies but is a fifty percent shareholder in a business in which he worked an average of eight hours per week and from which he received no remuneration. The facts in this case are undisputed. However, the parties disagree on the application of law to those facts.

In our analysis, we are mindful of R.C. 4141.46, which provides that the unemployment compensation statutes should be liberally construed in favor of the claimant. *Vespremi* v. *Giles* (1980), 68 Ohio App. 2d 91, 93, 22 O.O. 3d 102, 103, 427 N.E. 2d 30, 31.

Appellant bureau contends that Adams could not qualify for benefits as unemployed because he cannot show that he "neither provided services nor received payment," as required by R.C. 4141.01(M).[1] *Richards* v. *Ohio Bur. of Emp. Serv.* (May 25, 1978), Cuyahoga App. No. 37419, unreported. Appellant further argues that the fact that Adams received no remuneration is irrelevant so long as he rendered services to his own company. However, that argument

[1] R.C. 4141.01(M) provides:
"An individual is 'totally unemployed' in any week during which he performs no ser- vices and with respect to such week no remuneration is payable to him."

relies on *Richards* which is inapplicable here since it applies to totally unemployed and not partially unemployed claimants.

Appellant fails to recognize that a partially unemployed individual may be eligible to receive unemployment compensation benefits. "Partial unemployment" is defined as follows by R.C. 4141.01(N):

"An individual is 'partially unemployed' in any week if, due to involuntary loss of work, the total remuneration payable to him for such week is less than his weekly benefit amount."

R.C. 4141.01(R) provides in pertinent part:

"* * * Any application for determination of benefit rights made in accordance with section 4141.28 of the Revised Code is valid if the individual filing such application is unemployed * * *. Within the meaning of the preceding sentence, an individual is 'unemployed,' if, with respect to the calendar week in which such application is filed he is '*partially unemployed*' or 'totally unemployed' as defined in this section, or if, prior to filing his application, he was separated from his most recent work for any reason which terminated his employee-employer relationship, or was laid off indefinitely or for a definite period of seven or more days." (Emphasis added.)

As we said in *Rini* v. *Unemployment Comp. Bd. of Review* (1983), 9 Ohio App. 3d 214, 215, 9 OBR 364, 366, 459 N.E. 2d 602, 604, in which we found eligible for benefits a claimant who owned one third of a company, performed services for the company, served as its secretary-treasurer, but received no remuneration:

"He meets the requirements for being 'partially unemployed,' which makes him 'unemployed' for purposes of R.C. 4141.01(R) and thus eligible for benefits. This determination is consistent with *Belkin* v. *Bd. of Review* (Feb. 7, 1980),

Cuyahoga App. No. 40365, unreported. *Simply being an officer of a company does not make one ineligible for unemployment benefits.*" (Emphasis added.)

In *Belkin,* cited in *Rini,* we found a claimant qualified for benefits as partially unemployed after he was laid off by the company in which he also was an officer and shareholder, but received no wages for his continuing services as an officer.

A similar result was reached in *MacMillian* v. *Unemployment Comp. Bd. of Review* (1983), 10 Ohio App. 3d 290, 10 OBR 465, 462 N.E. 2d 177. MacMillian, after separation from his full-time employer, worked in a printing business which he and his wife partly owned. The business was losing money and MacMillian received no income from it for the twenty hours per week he worked there. The court stated:

"The manifest purpose of the unemployment compensation law is to assist those who are *involuntarily* unemployed, but the determination of whether a particular claimant is truly unemployed and available for work, within the contemplation of the law, necessarily involves a delicate balance. * * *

"* * *Under the law, and as a matter of public policy, the right to unemployment benefits is not conditioned upon complete idleness, and the undisputed evidence in this case militates against the finding that MacMillian was not available for work upon reasonable notice." (Emphasis *sic.*) *Id.* at 292, 10 OBR at 467, 462 N.E. 2d at 179.

Similarly, the court held in *Parent* v. *Administrator* (App. 1959), 84 Ohio Law Abs. 360, 171 N.E. 2d 522, where a laid-off claimant worked in an unprofitable variety store which he owned:

"Where a claimant for unemployment compensation has met all the requirements set out by law and has fully complied with the regulations of the commission regarding benefits he is en-

titled to unemployment compensation even though during his period of unemployment he was also operating a business of his own, where such self-employment produced no income." *Id.* at paragraph two of the syllabus.

The *Parent* court further noted:

"* * * As it turned out the business was strictly non-profitable. As a matter of cold fact, he was putting in a lot of time at what would be more properly called an avocation rather than an actual business. He probably had some hopes of turning that avocation into a real business. * * *

"We feel that the claimant should be placed in no worse position than a less ambitious man. Public policy demands this. He worked in employment covered by the State Unemployment Compensation. Part of his 'fringe benefits' provided by law was to be assured that in case he became unemployed he would have a minimum weekly income. This is what his employer paid for. This is what he should receive." *Id.* at 362, 171 N.E. 2d at 524.

Adams is in a position similar to that of Rini, Belkin, MacMillian, and Parent. He qualifies for benefits as a person partially unemployed (due to involuntary loss of work) whose total remuneration for each week he collected benefits was less than his weekly benefit amount. See R.C. 4141.01(N).

Appellant refers us to: *Sloan* v. *OBES* (Oct. 18, 1976), Cuyahoga C.P. No. 76-951106, unreported; *Richards, supra*; *Nutting* v. *Ford Motor Co.* (June 7, 1979), Cuyahoga App. No. 38979, unreported; and *Nunamaker* v. *U.S. Steel Corp.* (1965), 2 Ohio St. 2d 55, 31 O.O. 2d 47, 206 N.E. 2d 206. Appellant's reliance on these cases is misplaced because they are factually different from the case before us.

In *Sloan,* the claimant was denied benefits because he worked forty hours per week as a real estate salesman and was paid on' a commission basis during the period for which he sought benefits. In *Richards,* the claimant worked full time during the relevant period as the general manager of his parents' store and was paid eighteen hundred dollars the month after he stopped getting unemployment compensation benefits. In *Nutting,* the claimant received no compensation from his partly owned business but was paid by his union for working four to nine hours a day, six or seven days a week during the time he collected unemployment compensation. The holding in *Nunamaker* relates to whether a claimant may receive benefits while on vacation with pay and not on layoff.

Clearly, none of the cases relied on by appellant is applicable to the facts in the case before us.

We find that the common pleas court acted within its authority under R.C. 4141.28(O), which limits it to determining whether the decision was unlawful, unreasonable, or against the manifest weight of the evidence. *Kilgore* v. *Board of Review* (1965), 2 Ohio App. 2d 69, 31 O.O. 2d 108, 206 N.E. 2d 423, paragraph one of the syllabus.

We conclude that the court's reversal of the board of review's decision was proper.

*Judgment affirmed.*

PARRINO, C.J., and PATTON, J., concur.